# CHARLESTON.

Mary Martha McCallam, *Infant, v.* Hope Natural Gas Co.

Submitted March 20, 1923. ` Decided March 27, 1923.

1. Damages—*$2,500 For Permanent Injury to Child's Arm Held not Excessive.* `

   Where, in an action for personal injuries to a girl five and one-half years old, the evidence shows that a gaping wound, two inches wide and from three to four inches long was torn in her upper arm, exposing the bone and nerve; that a large piece of muscular flesh was torn from the arm; that an operation was necessary to properly cleanse and dress it; and that eighteen months later the injured arm was a half inch smaller than the other and did not function properly, a verdict of $2,500 can not be set aside as excessive. (p. 431).

2. Same—*Instruction that Jury Might Consider Extent that Permanent Injury Disabled Plaintiff from Engaging in Employments for Which Qualified, Although no Proof of Previous Engagement Therein, Held Proper.*

   Where the cause of action as alleged in the declaration in such a case is based upon: ` (1) permanent injury, (2) physical and mental suffering, (3) permanent disfigurement, and (4) expenses incurred for medical attendance, it was not error for the court to instruct the jury that it might consider "how far said injury is calculated to disable the plaintiff from engaging in those pursuits and employments for which, in the absence of said injury, she would have been qualified," though no proof is offered that plaintiff had previously engaged in or was qualified for any remunerative employment. (p. 432).

3. Municipal Corporation—*Child Receiving Injury from Iron Pipe on Passing Truck Held not Guilty of Contributory Negligence.*

   A child aged five and one-half years can not be said to

be guilty of contributory negligence, if while playing upon the sidewalk in front of her home on a narrow city street she hugs an electric lamp post with her arm, and it is crushed by a long iron pipe extending from the rear of a truck which the driver is attempting to turn from the street into an alley on the opposite side.  (p. 430).

4.  DAMAGES—*Infant Cannot Generally Recover for Medical Expenses in Action for Personal Injuries.*

Generally, an infant, in an action for personal injuries can not recover for expenses incurred for medical attendance, since such expenses fall upon the father who is responsible for the infant's care.  (p. 433).

5.  APPEAL AND ERROR—*Damages for Personal Injuries to Infant Excessive to Amount Fixed for Medical Attendance, and Will be Set Aside, Unless Consent to Release Such Amount Filed.*

So, if in such case the declaration avers that the damage sustained because of such expenditures amounts to $500, and the evidence does not fix the expenses at a definite figure, and the jury is instructed that it may in assessing the damages award compensation for doctors' bills up to the amount claimed in the declaration; the verdict returned for the plaintiff must be deemed excessive in the amount of $500; and this court, if satisfied that the verdict is correct in all other respects, should reverse and set aside the judgment, with directions to the circuit court that unless the plaintiff will consent to a release of $500 of the verdict, and accept a judgment for the balance, the verdict shall be set aside and a new trial awarded.  (p. 434).

Error to Circuit Court, Marion County.

Action by Mary Martha McCallam, infant, by next friend, against the Hope Natural Gas Company.  From a judgment for plaintiff, defendant brings error.

*Affirmed on condition.*

*Neely & Lively,* for plaintiff in error.
*L. C. Musgrave* and *Shaw & Shaw,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff, an infant, suing by her next friend, recovered a judgment of $2500 for personal injuries suffered when she

was struck by a piece of pipe or oil well casing while the latter was being hauled through the streets of Fairmont on one of defendant's motor trucks. Defendant seeks to reverse the judgment.

Plaintiff at the time of the injury was about five and one-half years of age and resided with her parents in an apartment in the Murphy-Deveny Building at the inter-section of Madison Street and Hull Alley in the City of Fairmont, and when hurt was playing with other children on the sidewalk in front of the building. As the location, condition and width of the street and alley are material circumstances in connection with the accident, it is necessary to describe briefly the geographical setting.

Madison Street ascends from the Monongahela River, up a very steep hill northerly towards Adams Street near the summit. Hull Alley parallels Adams Street and crosses Madison at a point a short distance down the hill. The Murphy-Deveny Building is on the west side of Madison Street and abuts the northern line of Hull Alley. Across the street and a little above stands the Watson Hotel. Madison Street is less than thirty feet wide, according to the record.

There were four eye-witnesses to the accident. J. S. Wade, a taxi-cab driver, was sitting in his car, which he had parked on the right or west side of Madison Street, facing down the hill towards the entrance of Hull Alley about twenty feet distance. Albert Frum, his attention being called to the truck while attempting to cross Madison Street, was standing in the street about twenty feet from the truck in which the pipe was being hauled. Fay Hibbs, a painter, was standing in the door-way of the Murphy-Deveny Building. G. S. Constable, a defense witness, was on the steps in front of the same building. The accident occurred in plain view of them all and their versions of it agree in most particulars.

All agree that plaintiff, her younger brother, and perhaps another child were upon the sidewalk in front of the building in which plaintiff lived, and that when injured she had her left arm around a metal electric light post which stood in the edge of the sidewalk a few feet from Hull Alley. They further

agree that the driver of the truck was attempting to turn it to the left, that is to say, eastward, into Hull Alley. His object in doing so, as is testified by him, was to avoid driving his car down the hill, which he considered too steep a grade for his truck, loaded as it was with approximately two tons of iron pipe. The truck weighed an additional two tons. The pipe was so jointed together that the load consisted of four sections, each twenty feet in length, and the seat and front part of the truck added an additional eight or ten feet to the length of the vehicle and load. In order, therefore, to make the turn in the narrow street into the alley, the driver drove close to the right side of the street near plaintiff, and tried to avoid projecting the ends of the pipes over the sidewalk by "going straight down on the other side of the alley and into the curb and backing up." Just what is meant by this explanation is not entirely clear, but the result was that when he turned to the left the pipes extending from the rear of the truck struck the electric light pole crushing and badly lacerating the plaintiff's arm. Concerning the facts there is no controversy. The only circumstances argued as being material, and to which all of the witnesses do not testify is found in the evidence of defendant's witness Constable, wherein he states that just before being struck, plaintiff and the other children were walking along the sidewalk by the truck patting the pipes with their hands. His testimony is as follows:

"As the car started off (it appears that the driver stopped the truck while considering the advisability of driving down the hill) they walked down along the sidewalk and this pipe kind of swung back to the sidewalk and they just walked along patting their hands on it, running along after the truck, and the truck in swinging around kind of jumped and then the little girl put her arm around the post on the sidewalk and the end of the pipe struck against the post caught her arm against the lamp post."

All the other witnesses are silent concerning the patting. We will consider it later.

Defendant's counsel assigns seven points of error in the brief. They may be properly boiled down to three main propositions, which we will discuss in logical sequence.

First. While counsel make no contention in argument that defendant was free from negligence, and indeed we think such negligence is patent upon the record, it is argued with some insistence that the jury was improperly instructed concerning the alleged contributory negligence of the plaintiff. We can not regard this as a consequental issue. To what circumstance of fact can defendant's counsel apply the legal principles as to the contributory negligence of children which they set out in their brief? Plaintiff and her companions were playing upon the sidewalk in front of their own home, not in the traveled street, but upon that portion of the thoroughfare especially set apart for pedestrians. Can it be said that children in cities are never to be allowed to enjoy the out of doors, always to be housed save when under the immediate care and protection of parent or nurse? That is the argument of defendant's instructions Nos. 1 and 12, which would impute the parents' negligence in letting their children out to the plaintiff, and the refusal of which plaintiff claims was erroneous. We recognize no such principle. As more acceptable argument perhaps, counsel stress the evidence in regard to the "patting" which we have quoted above. Conceded that the children, plaintiff included, did "pat" the pipes, as one witness says, what connection had that with the injury? When injured, plaintiff was standing on the walk with her arms around the post, and by testimony of the same witness, the truck swung around and "kind of jumped" and the pipes caught her arm against the pole. We know no legal principle which requires that a child of plaintiff's age, or older person either, should have anticipated that the truck driver would so operate his vehicle as to project the pipes over the sidewalk, (one witness says three or four feet,) and violently strike a lamp post with them. True, the evidence records that a truck similarly loaded had just made the turn successfully, and had proceeded out the alley, but of this plaintiff may or

may not have taken notice, and the fact is, the pipes were too long, and since they were jointed together, unnecessarily too long, for one driver to handle on city streets.

Our answer, therefore, to the first query we raised is that we find no facts upon which defendant could defend upon the ground of contributory negligence. However, we think it appropriate, in view of defendant's attack upon it, to quote plaintiff's instruction No. 3, given over objection:

> "The Court instructs the jury that the conduct of an infant is not of necessity to be judged by the same rules which govern that of an adult; that while it is the general rule, in regard to an adult or grown person, that to entitle such person to recover damages for an injury resulting from the fault or negligence of another, such person must have been free from fault, *wuch* is not the rule in regard to an infant of tender years. The care and caution required of a child is according to its maturity and capacity wholly, and this is to be determined by the circumstances of the case and the evidence before the Jury, and the law presumes that a child between the ages of 5 and 6 years cannot be guilty of contributory negligence, and, in order to establish that a child of such age is capable of contributory negligence, such presumption must be rebutted by evidence and circumstances establishing her maturity and capacity."

In our recent case of *Prunty* v. *Tyler Traction Company,* 90 W. Va. 194, 110 S. E. 570, Judge Ritz dwelt at length upon the subject of the contributory negligence of children. We therefore think it only necessary to say that, under the facts of this case, we find nothing in the instruction quoted which violates our holding in that case, and we therefore approve it.

Second. Defendant contends that the damages are excessive. In so far as the seriousness of the injury inflicted is concerned, we find little merit in this contention. The facts are that a gaping wound two inches wide and extending from the "junction of the middle and lower third of the arm, down almost to the elbow" was torn in plaintiff's arm, ex-

posing the bone and nerve, and a large piece of muscular flesh was torn completely out. It was necessary to give her an anesthetic that the wound might be properly cleaned of the rust, paint and dirt, and properly dressed. She was confined to her room for a week, most of the time in bed, and eighteen months later, at the trial, the injured arm was a half-inch smaller than the other, and did not function quite as well. Under many decisions of this court, it would be entirely improper for us to rule that a verdict of $2500 was not in proportion to the injuries suffered. There is a point in this connection, however, which merits attention. Defendant objects to plaintiff's instruction No. 5, which is as follows:

"The Court instructs the jury that if they find the Defendant guilty, they are, in estimating the damage at liberty to consider the health and condition of the Plaintiff before the injury complained of as compared with her present condition in consequence of said injuries, and whether said injury is, in its nature, permanent, and how far said injury is calculated to disable the Plaintiff from engaging in those pursuits and employments for which, in the absence of said injury, she would have been qualified and also the physical and mental suffering to which she was subjected or may have been subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained, not to exceed the amount claimed in the declaration."

Note that the jury is to consider "how far said injury is calculated to disable the Plaintiff from engaging in those pursuits and employments for which, in the absence of said injury, she would have been qualified." Defendant calls attention to this, and in substance argues that, since it is not shown that plaintiff was engaged in or qualified for any pursuit, the questions raised under the instruction were improper for the jury's consideration. Defendant argues that there can be recovery only where the infant plaintiff shows by the evidence an ascertained earning capacity. This argu-

ment is much like that raised in *Weaver* v. *Wheeling Traction Company*, 91 W. Va. 528, 114 S. E. 131. There an eight year-old boy sued for personal injuries, and under an instruction almost identical with the present one, the point was raised in defense that the instruction would allow damages for plaintiff's loss of ability to earn during his minority, admittedly not recoverable by an infant. *Comer* v. *Ritter Lumber Co.*, 59 W. Va. 688, 53 S. E. 906, 6 L. R. A. (N. S.) 552, 8 Ann. Cas. 1105. The court answered this question as follows: ''But plaintiff did not sue for this loss, nor, do we think the instruction, when properly construed, told the jury that plaintiff could recover for loss of services during his minority.'' So, here, plaintiff does not sue for loss of services; her claims are four: (1) permanent injury, (2) physical pain and mental anguish, (3) permanent disfigurement, and (4) medical expense. Nor do we think that this instruction when construed in the light of the declaration which sets out plaintiff's claims for recovery is subject to the defendant's objection. The ascertainment of the permanent damage to an infant of plaintiff's age is a matter scarcely determinable by fixed rules; it must be left to the common experience of the jury.

Third. Defendant complains that under plaintiff's instructions Nos. 4 and 6 the jury were improperly instructed that plaintiff should recover, inter alia, the expenses incurred for medical attention. We find cause for complaint on this ground. Instruction No. 6 reads in part as follows:

> ''The Plaintiff, if you find her entitled to recover, should be awarded compensation for all expenses actually paid or incurred for doctors' bills, not exceeding the amount claimed therefor in the declaration.''

Instruction No. 4 contains language of similar import. Under the recognized principle that the responsibility for the care of the minor rests in the father, the law seems well established that save for excepted cases a minor cannot recover for medical expenses in an action for personal injury. ''Where the plaintiff is a minor, he cannot recover for medi-

cal expenses incurred for medical attendance unless he has actually paid them (*Tompkins* v. *West*, 56 Conn. 478), nor can he recover at all for a medical bill paid by his father (*Kleigel* v. *Aitken*, 94 Wis. 432), nor where, under the circumstances of the case, the parents of the minor are primarily liable for the bill (*Newbury* v. *Getchel etc. Lbr. Co.*, 100 Ia. 441).'' 8 A. & E. Ency. Law, 648. In general accord, see: 2 Sedgwick, Damages (9th ed.) §486b; 4 Sutherland, Damages (4th ed.), page 4737. No circumstances are shown which would except the present case from the general rule. It is not unlike the principle that a married woman may not recover for expenses incurred for medical attendance, the responsibility therefor falling on the husband. *Atlantic & Danville R. Co.* v. *Ironmonger*, 95 Va. 625, 29 S. E. 319; *Richmond Ry. & Elec. Co.* v. *Bowles*, 92 Va. 738, 24 S. E. 388; *Warth* v. *County Court*, 71 W. Va. 184, 76 S. E. 420.

The error of the circuit court in giving these instructions, however, will not necessarily require that the verdict be set aside. In her declaration, plaintiff claims $500 for medical expenditures. The bill of particulars shows $110; $100 to Dr. J. E. Offner, and $10 to Dr. H. S. Keister. The evidence shows additional expenses, the amounts of which are not fixed. By testimony, not objected to, plaintiff's parents tell of a trip to a specialist in Wheeling, and the father states: ''We have had expenses ever since.'' We can not tell at what figure the jury placed these indefinite expenditures; it may be that under instruction No. 4, they allowed the full amount sued for, $500.00. If so, the verdict is excessive to that amount. This circumstance makes it impossible for us to follow the suggestion in plaintiff's brief that we remit the sum of $110, and affirm the judgment as to the rest.

However, to preserve a judgment so plainly right so far as plaintiff's general right of recovery is concerned, we will reverse the judgment, set it aside, and remand the cause to the circuit court of Marion County, with directions that unless the plaintiff will agree on the record to release the sum of $500 of the verdict,—as it may be that that amount,

or at least more than $110 was improperly allowed for doctors' bills and expenses, the verdict being excessive to that extent, and right in every other respect—the verdict be set aside, and a new trial awarded; but if the plaintiff accepts the sum of $2000, the motion of the defendant. for a new trial will be overruled, and judgment rendered for the said sum of $2000, with interest from the date of the verdict and costs in the court below, but the defendant will be allowed its costs on this writ of error in this court. *Buena Vista Co.* v. *McCandlish,* 92 Va. 297, 23 S. E. 781; *McIntyre* v. *Smyth,* 108 Va. 737, 62 S. E. 930. *Chapman* v. *Beltz & Sons Co.,* 48 W. Va. 2, 35 S. E. 1013.

*Affirmed on condition.*